**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF GEORGIA**

**STATESBORO DIVISION**

| | |
|---|---|
| CANDICE RICHARDSON, ) | |
| ) | |
| Claimant, ) | |
| ) | |
| v. ) | Case No. CV612-019 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| *Acting Commissioner of* ) | |
| *Social Security*,[1] ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Candice Richardson appeals the Social Security Commissioner's denial of her application for Supplemental Security Income (SSI). Doc. 1. An ALJ evaluated her medical evidence and determined that, despite her low intelligence, obesity, mildly degenerative arthritis of the lumbar spine, asthma, anxiety, and depression, she was not

---

[1] Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this action. See http://www.ssa.gov/pressoffice/factsheets/colvin.htm (site last visited February 26, 2013). The Clerk shall amend the docket caption accordingly, and all subsequent filings shall conform.

disabled.[2]  Doc. 11-2 at 31.[3]  For the reasons set forth below, the Commissioner's decision denying benefits should be **AFFIRMED**.

I.  **BACKGROUND**

Richardson was 25 years old on May 27, 2008, when she applied for benefits.[4]  Doc. 11-2 at 30.  With a tenth-grade education, doc. 11-7 at 12, she had previously been employed as a cashier and laborer, doc. 11-7 at 7, worked at fast food restaurants, and also cleaned houses. Doc. 11-2 at 40.  In her SSI application she claimed she became unable to work on January 1, 2008, yet she also said that she kept working until April 1, 2008.  Doc. 11-7 at 6.  She stopped "[b]ecause of my condition[.]  I tried to maintain a position with my employers but I

---

[2]  It has been her burden to demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period *of not less than 12 months*...." 42 U.S.C. § 423(d)(1)(A) (emphasis added). Her physical or mental impairment must be so severe that she is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A).

[3]  All documents referenced here have been "E-filed."  The Court is thus using the electronic pagination placed on the top of each page by the Court's CM/ECF software.

[4]  She is thus defined as a younger individual (age 18–49) on the alleged disability onset date. *See* 20 CFR §§ 404.1563(c) and 416.963(c).

2

had many medical appointments. My depression, mood swings and irritability became too much of an interference." *Id.*; *see also id.* at 13.

Explaining how her "illnesses, injuries or conditions limit[ed] her ability to work," doc. 11-7 at 6, Richardson wrote that

> I have difficulty maintaining my emotions, uncontrollable anger, irritability, and emotional instability. I have difficulty maintaining employment, concentrating, remembering instructions and cannot handle a full shift at work required of me. My depression causes me to have anger issues, emotional mood swings, irritability, anxiety attacks/panic attacks. My depression limits my ability to function with even routine normal daily activities.

Doc. 11-7 at 6; *see also* doc. 11-2 at 40-44 (her oral testimony about her impairments). She thus did *not* supply any physical limitations such as back pain. In the "any additional information" section of her application, she continued to cite only *mental* (hence, non-exertional) impairments. *Id.* at 13 ("emotional mood swings, emotional instability, nervous breakdown and anxiety attacks. . . ."). Following a hearing at which Richardson testified and added exertion-based complaints (back problems, asthma) and cited a short-term memory deficit, doc. 11-2 at 39-47, the ALJ found against her, and further

administrative appeal was denied, doc. 11-2 at 2, leading to this judicial review. Doc. 1.

## II. STANDARD OF REVIEW

Affirmance of the ALJ's decision is mandatory if his conclusions are supported by substantial evidence and based upon an application of correct legal standards. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is something more than a mere scintilla, but less than a preponderance." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks and citations omitted). It "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation marks and citations omitted). If substantial evidence supports the decision, the Court will affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Id.* at 1158-1159; *Lewis v. Astrue*, 2009 WL 464264 at *2 (M.D. Fla. Feb. 24, 2009).

This Court cannot substitute its judgment for that of the Commissioner. *Barnes v. Sullivan*, 932 F.2d 1356, 1357-1358 (11th

4

Cir. 1991). Nor may it "reweigh the evidence or make new factual findings." *Brown v. Commissioner of Soc. Sec.*, 2012 WL 638789 at * 1 (11th Cir. Feb. 29, 2012) (citing *Dyer*, 395 F.3d at 1210).

The burden of proving disability lies with the claimant. 20 CFR § 404.1512; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). To determine whether she has met her burden, the Court looks to the five-step evaluation process set forth in the Social Security Regulations. 20 CFR § 416.920; *Dixon v. Astrue*, 312 F. App'x 227, 227-28 (11th Cir. 2009); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). At step one, the claimant must prove that she has not engaged in substantial gainful activity. *Jones*, 190 F.3d at 1228. At step two, she must demonstrate a severe impairment or combination of impairments. *Id.*

Then, at step three, if the claimant's impairment meets or equals a listed impairment, she is automatically found disabled. *Id.* If not, she must advance to step four, which requires her to prove an inability to perform past relevant work. *Id.* If she has never worked, or cannot perform past relevant work, stage five shifts the burden to the Commissioner to show that "there is other work available in significant

numbers in the national economy that the claimant is able to perform."
*Id.*

### III. ANALYSIS

#### A. The ALJ's Determination

Richardson's contentions are best understood by first reviewing the ALJ's five-step analysis. He found that she achieved step one -- she had not engaged in substantial gainful activity since her application date, doc. 11-2 at 25, and "does not have relevant past work." Doc. 11-2 at 30. As for step two (demonstrate a severe impairment or combination of impairments), he found that she suffered from the following "severe" impairments: "obesity with mild degenerative arthritis of the lumbar spine." Doc. 11-2 at 25.

But the ALJ also found that simple weight loss and other measures (exercise, etc.) would remediate that. *Id.* And while Richardson also suffers from asthma, it is not a severe impairment "because the medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that has no more than a minimal effect on [Richardson's] ability to work." *Id.* The ALJ cited the finding by Jack R. Eades, M.D., who on April 11, 2008

diagnosed her with only "mild persistent asthma." He did likewise for other claimed impairments. Doc. 11-2 at 26-27.

On step three (impairment meets or equals a listed impairment), the ALJ found that Richardson's "medically determinable mental impairments of anxiety and depression, considered singly and in combination, do not cause more than minimal limitation in [her] ability to perform basic mental work activities and are therefore nonsevere." Doc. 11-2 at 26. To reach that conclusion, he examined Richardson's testimonial and medical-evidence claims and explained, for example, that she was "generally functioning pretty well and having some meaningful relationships." Doc. 11-2 at 26. Her anxiety based symptoms had cleared up after treatment, and her own mother reported that she

> has no problem with personal care, is able to perform household chores, would prepare meals if she lived alone, goes out daily, drives a car, can go out alone, shops in stores for clothes and food weekly and for about an hour, watches television, exercises, and walks daily, visits family and friends, talks on the telephone, does not need reminders to go places or someone to accompany her, requires no special reminders to care for her personal needs, and needs no help or reminders to take her medication.

Doc. 11-2 at 27 (citing doc. 11-7 at 75-80).

7

In short, the ALJ determined that Richardson at most suffered from "mild," thus nonsevere, mental impairments. Doc. 11-2 at 27. Furthermore, no impairment or combination of impairments met or medically equaled those listed in 20 CFR Part 404, Subpart P, App. 1 (20 CFR § 416.920(d), § 416.925[5] and § 416.926). *Id.* Thus, Richardson failed to meet the step-three requirements. And step four -- requiring her to prove inability to perform relevant past work -- is irrelevant because the ALJ found she engaged in "no past relevant work." Doc. 11-2 at 30; *see also id.* at 25 (no substantial gainful activity since the May 7, 2008 application date).

For step five, the ALJ found that Richardson was a younger individual with a limited education, but she nevertheless had the ability to communicate in English. Doc. 11-2 at 29. Also, she has the Residual Functional Capacity (RFC) to perform the full range of medium work as defined in 20 CFR § 416.967(c), which includes lifting and carrying up to 50 pounds occasionally and 25 pounds frequently, sitting for up to 6 hours during an 8-hour workday with normal breaks, and standing or

---

[5] Note that "[a]n impairment that meets only some of the criteria of a Listing, no matter how severely, does not qualify. 20 CFR § 416.925(c)(3)." *Kalishek v. Comm'r of Soc. Sec.*, 470 F. App'x 868, 870 (11th Cir. 2012). Much of the argument contained in Richardson's brief touts factors that meet only some of the listed criteria.

walking for up to 6 hours during an 8-hour workday with normal breaks. Doc 11-2 at 27. And, her obesity did not meet or medically equal "any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, such as Medical Listing 1.02 or 1.04." *Id.*

To that end, the ALJ made credibility determinations. Doc. 11-2 at 28. Despite her testimony otherwise, Richardson has back pain and problems but they are not disabling and are medically manageable. *Id.* at 28-29. Her own mother's descriptions showed that her claimed physical inability and pain was exaggerated. *Id.* at 29. The ALJ also rejected consultative medical evidence as unsupported. "First, some of the diagnoses, such as bipolar disorder, appear to be based on the history provided by the claimant. . . ." *Id.* And "other evidence of record, such as the report of [claimant's mother], does not appear to support the severity of claimant's mental impairments as indicated in the report of [consultative examiners]." *Id.*

He also gave "little weight to the State agency psychological consultants' mental assessments of severe mental impairments. . . ." *Id.* The severity assessment did not match Richardson's activities as described by her mother, and other factors may have tainted the

9

examiner's analysis: the then recent death of Richardson's father plus a urine test "positive" for cocaine. And while the claimant is obese and suffers "credible symptoms of back pain," the daily activity descriptions both she and her mother provided show that she nevertheless can engage in medium exertional work. Doc. 11-2 at 29-30.

Considering claimant's age, education, work experience, and a "medium-work-range" RFC, and after consulting the "grids" (Medical-Vocational Guidelines, 20 CFR Pt. 404, Subpt. P, App'x 2), the ALJ concluded there are a significant number of jobs in the national economy that she can perform. Doc. 11-2 at 30. Hence, she is not disabled and thus not entitled to SSI. Doc. 11-2 at 30-31.

### B. Richardson's Claims

Richardson contends that the ALJ's opinion is not supported by substantial evidence. Specifically, he erred by (1) improperly evaluating the effect of her mental impairments on her ability to work; (2) failing to properly evaluate her RFC; and (3) failing to obtain a Vocational Expert's (VE's) opinion given the non-exertional limitations established by the medical evidence of record. Doc. 13 at 1-2; *see also* doc. 15 (reply brief). All of Richardson's arguments fail.

She first complains that the ALJ "played doctor" by "reject[ing] every medical opinion of evidence except for one GAF assessment[6] made the day Ms. Richardson was released from a mental institution." Doc. 13 at 12. The ALJ's decision, she insists, "fails to articulate a sound basis for rejecting these opinions." *Id.* And, she complains, he

---

[6] As another court explains:

> GAF is an acronym which refers to an individual's score on the Global Assessment of Functioning Scale. Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. Text Revision 2000). The scale is used to report the "clinician's judgment of the individual's overall level of functioning" in light of his psychological, social and occupational limitations. *Id.* The GAF ratings range from 1 to 100. A score of 45 is indicative of "serious symptoms ... OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* at 34.

*Carter v. Comm'r of Soc. Sec.*, 2013 WL 209182 at * 1 (3rd Cir. Jan. 18, 2013). Some courts have upheld an ALJ's *rejection* of disability medical opinions based on a GAF-based assessment:

> Doney also contends that the ALJ failed to set forth clear and convincing reasons for rejecting her treating psychologist's assignment of her Global Assessment of Functioning ("GAF") score. This court, however, has recognized that "[t]he Commissioner has determined the GAF scale 'does not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorders listings.'" *McFarland v. Astrue*, 288 Fed. Appx. 357, 359 (9th Cir. 2008) (some alterations in McFarland) (quoting 65 Fed. Reg. 50,746, 50,765 (Aug. 21, 2000)). We therefore hold that it was not error for the ALJ to disregard Doney's GAF score.

*Doney v. Astrue*, 485 F. App'x 163, 165 (9th Cir. 2012); *see also Morning v. Astrue*, 2013 WL 257412 at * 10 (C.D. Cal. Jan. 23, 2013). Richardson cites the "no direct correlation" determination here to show that the ALJ should not have relied on her GAF score to support his finding that her depression and anxiety are "non-severe." Doc. 15 at 2.

"simply selected Ms. Richardson's psychiatrist's [GAF] score of 65 upon her discharge from [a facility named] Focus by the Sea after she attempted suicide. The ALJ focused only on this assessment and used this score as his only evidence of record to support a finding that her depression and anxiety are 'non-severe.'" Doc. 15 at 2.

The Court rejects this argument. The SSA regulations specifically require an ALJ to address weight and credibility issues with reasoning when making a disability determination. *See* 20 CFR §§ 404.1520(a)(4) (five-step process); 416.920(a)(4) (same); 404.1527(c) (weighing medical opinions); 416.927(c) (same); 404.1529 (credibility); 416.929 (same). *See Harlan v. Astrue*, 2013 WL 470489 at * 4 (10th Cir. Feb. 8, 2013). In so doing, however, he is free to accord more or less weight to any medical opinion if there is good cause to do so. *See Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991).

To that end, an ALJ need not give any one physician's opinion controlling weight. Nor is that physician's opinion dispositive, since the determination of disability is reserved to the commissioner. *Garred v. Astrue*, 383 F. App'x 820, 822 (11th Cir. 2010); CAROLYN A. KUBITSCHEK, SOCIAL SECURITY DISABILITY § 2.41 at 204-05 (2013). And good cause

exists for rejecting a treating physician's opinion when it is not supported by the evidence, the evidence supports a contrary finding, or it is conclusory or inconsistent with the doctor's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004); *see Crawford*, 363 F.3d at 1159 ("A treating physician's report 'may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory.'").

Next, an ALJ need not discuss each 20 CFR § 404.1527(d)(2) factor, but need only be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Bussell v. Astrue*, 463 F. App'x 779, 782 (10th Cir. 2012) (quotes and cite omitted); *see also Gonzales v. Colvin*, 2013 WL 602932 at * 2 (10th Cir. Feb. 19, 2013) (substantial evidence supported ALJ's acceptance and rejection of medical opinion on back-pain and depression-based SSI claim).

Finally, an ALJ may disregard a physician's opinion that is based on the claimant's subjective complaints where the ALJ has already properly discredited claimant's subjective complaints. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir.1989), cited in *Mai Chang v. Comm'r of Soc. Sec.*

13

*Admin.*, 2013 WL 485264 at * 1 (9th Cir. Feb. 8, 2013); *see also Gainous v. Astrue*, 402 F. App'x 472, 474 (11th Cir. 2010) (ALJ's failure to give controlling weight to the opinion of a claimant's treating physician was supported by good cause; medical evidence contradicted the physician's opinion, and the ALJ believed that the physician's opinion was contradicted by the activities the claimant performed after the expiration of her insured status, citing two examples); *Copher v. Comm'r. of Soc. Sec.*, 429 F. App'x 928, 930 (11th Cir. 2011) (ALJ properly found that treating neurologist's opinion was not entitled to controlling weight because it was inconsistent with other substantial evidence in the record, including physician's own records).

Here the Court might well disagree with the way the ALJ weighed the medical and other (here, claimant's testimonial) evidence. But as noted in the governing standards set forth above, it is not free to reweigh what the ALJ weighed; its only task is to determine whether substantial evidence supports it. And the ALJ, who was required to provide only a reasoned basis for according less weight to medical opinions, *Carter*, 2013 WL 209182 at * 2, did so here by relying on "treatment notes of the Southern Medical Group, dated April 1, 2008 to May 29, 2008,

14

indicat[ing] chief complaints other than mental health issues (Exhibit F)." Doc. 11-2 at 26. By 2010, Richardson "apparently reported no psychiatric problems in the previous six months . . . ." *Id.* at 27. In other words, she had mental health and other problems. And at one point they were severe. But they were medically addressed -- successfully enough. The ALJ properly applied the standard, as set forth in note 2 *supra*, that impairments must be "expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §423(d)(1)(A). He is not fixed in time -- a medical opinion may show that a claimant is severely depressed on one date but subsequently she may improve, as is natural for many, and if substantial evidence supports the conclusion that improvement took the claimant from severe to non-severe, this Court must respect that.

That is essentially what happened here. The ALJ did not improperly rely on Richardson's GAF score upon her discharge from a treatment facility, nor Alina Galliano, M.D.'s assessment of her functionability at that time. Rather, he cited it only as an indicator, along with other record evidence, that she had improved to the point of attaining a RFC supporting his medium work finding. The record shows that Richardson was admitted with a GAF ("Axis") 30 score and exited

with a 65 -- hence, she had severe problems but was treated and made considerable progress. Doc. 11-8 at 7. And when she was admitted to treatment her score was low because of her father's death, her failure to take her anxiety medication, and her abuse of cocaine. Doc. 11-2 at 26; doc. 11-8 at 4-5. It was proper for the ALJ to cite and rely on this evidence to conclude that her problems could not be expected to last more than 12 months, and that they could be and in fact were treated.

Finally, it was entirely proper to rely on what Richardson's own mother reported on November 2, 2009 -- that (as summarized by the ALJ) "claimant has no problem with personal care, is able to perform household chores, would prepare meals if she lived alone, goes outside daily, drives a car, can go out alone, shops in stores for clothes and food weekly. . . ." Doc. 11-2 at 27 (citing doc. 11-7 at 75-80). For that matter, the ALJ was also free to deploy common sense in assessing medical reports that uncritically accepted Richardson's depression and anxiety claims -- claims that were negated by the clear description of her daily functioning by her own mother. That evidence is enough to support the ALJ's rejection of any non-exertion based, disability medical opinions. Again, the law requires only substantial evidence and forbids reweighing

by reviewing courts. The ALJ did not improperly evaluate the record evidence, and he properly evaluated Richardson's RFC.

Richardson also contends that the ALJ erred by failing to obtain vocational expert ("VE") testimony and instead relied solely on the Medical–Vocational Guidelines appearing in 20 CFR Pt. 404, Subpt. P, App'x 2 ("the grids") to find that she was not disabled. Doc. 13 at 1-2, 15. Again, step five requires the Commissioner to demonstrate that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's RFC, age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); 20 CFR § 404.1560(c). The ALJ thus may satisfy that burden either through the testimony of a vocational expert or by reference to the grids. *Morning*, 2013 WL 257412 at * 11.

> The grids present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant. They consist of a matrix of four factors -- physical ability, age, education, and work experience -- and set forth rules that identify whether jobs requiring specific combinations of those factors exist in significant numbers in the national economy. If such work exists, the claimant is not disabled.

*Morning*, 2013 WL 257412 at * 11 (cites omitted).

17

The ALJ did not err here. He considered Richardson's non-exertional impairments, including her Borderline Intellectual Function and depressive and anxiety claims, when he determined her RFC. The evidence authorized him to conclude that they did not cause more than minimal limitation to her ability to perform the full range of medium work. He thus was also authorized to dispense with a VE and rely only on the grids. *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (it was appropriate for the ALJ to rely exclusively on grids and no VE to determine that claimant could perform other work than his past work, since ALJ only needed to consult VE if claimant had nonexertional impairment that limited a wide range of work at given level; ALJ had determined that claimant's non-exertional impairments of depressive disorder and pain disorder did not cause more than minimal limitation to his ability to work, and also determined that his exertional impairments not limit wide range of light or sedentary work); *Reed v. Sullivan*, 988 F.2d 812, 816 (8th Cir. 1993) (reliance on medical-vocational guidelines, without VE testimony, is permitted if ALJ determines that claimant's nonexertional limitations do not significantly affect claimant's RFC).

## IV. CONCLUSION

The ALJ's assessment of Richardson's degree of impairment at both steps three and four of the sequential analysis show that he considered all of her limitations, whether severe or not, and in combination, before he concluded that she was not disabled. Because substantial evidence in the record supports that result, the Commissioner must be **AFFIRMED**.

**SO REPORTED AND RECOMMENDED** this  11th  day of March, 2013.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA